UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

JOHN GORDON YOUNG and                       Case No. DG 06-06385
GERALDINE J. YOUNG,                         Chapter 13
                                            Hon. Scott W. Dales

                    Debtors.
_____/

OPINION AND ORDER REGARDING
MOTION FOR DISCHARGE

PRESENT:   HONORABLE SCOTT W. DALES
           United States Bankruptcy Judge

Near the end of their sixty month "applicable commitment period," Chapter 13 Debtors John and Geraldine Young (the "Debtors") filed a Motion for Entry of Discharge (the "Motion," DN 143), arguing that they satisfied their payment obligations under their Chapter 13 Plan, as amended (the "Plan").[1]  Their Chapter 13 Trustee, Brett N. Rodgers (the "Trustee"), opposes the Motion, and the court held a hearing on the Motion in Grand Rapids, Michigan, on April 18, 2012.  The court took the matter under advisement and, at Debtors' request, gave them until April 25, 2012 to file additional papers regarding their alternative payment calculations.

By way of background, on June 13, 2007 the court entered an order confirming the Debtors' Plan.  Over the next five years, the Debtors proposed several plan modifications, principally changing the amount of their weekly payment.  As the Debtors neared the end of their sixty month "applicable commitment period," they calculated that they satisfied their obligations

_____

[1] Most of the operative terms of the Plan (other than the amendments affecting payment amounts) are reflected in a restatement of the Plan denominated as "Amendment No. Three" (DN 61). Unless otherwise noted, any references to the "Plan" in this Opinion shall refer to DN 61.

under the Plan in that the Trustee had enough cash on hand to pay a 5% dividend, or approximately $1,676.91, to unsecured creditors. The Debtors contacted the Trustee to make arrangements for closing the case and entering the discharge. The Trustee, however, interpreted the Debtors' obligations under the Plan differently, and advised them that they had not fulfilled their payment obligations, including the obligation to pay "all disposable income as defined by 11 U.S.C. § 1325(b)(2) for not less than the applicable commitment period." In response, the Debtors filed their Motion.

At the April 18 hearing, the Debtors agreed there are no factual disputes regarding the amount paid over the years, or that they have failed to remit approximately three months worth of plan payments. They claim the only remaining dispute is the proper interpretation of the Plan. The parties also agreed, given the Trustee's distributions to secured creditors, that unsecured creditors have received only $1,013.92 as of April 17, 2012. This is less than the 5% dividend (or $1,676.91) provided for in the Plan. The Debtors contend, however, that if the Trustee had not made the April 2012 payments to secured creditors, he would have had enough on hand at the time of their Motion to pay a 5% dividend to unsecured creditors, and their payment obligations under the Plan would have been complete. In other words, even though the Debtors missed over three months of Plan payments, at the time of the Motion they contend they had remitted enough to fund a 5% dividend, if the Trustee had not made the April 2012 mortgage payment.

Having reviewed the record, including the Plan, the applicable statute, and other authorities in the Debtors' supporting brief, the court concludes that the Debtors are not entitled to a discharge under 11 U.S.C. § 1328(a).

First, the court interprets the Plan as imposing upon the Debtors at least three payment obligations: (1) the obligation to make weekly plan payments (Plan at ¶ I.A.); (2) the obligation to "pay into the Plan all disposable income as defined by 11 U.S.C. § 1325(b)(2) for not less than the applicable commitment period" (Plan at ¶ I.C.); and (3) the balloon payment "as may be necessary to complete payments required under the Plan within 60 months of Plan confirmation" (Plan at ¶ I.D.).

Second, although the Plan requires the Debtors to pay creditors a 5% dividend, the court interprets this provision as requiring a dividend of *at least 5%*, and possibly more given the Debtors' additional obligation to remit "all disposable income" during the Plan term.  This construction, unlike the Debtors' interpretation, gives meaning to the disposable income provision of the Plan.  Because the Debtors proposed the Plan, *see* 11 U.S.C. § 1321, it is not unfair to construe it against them. *In re Jenkins*,  417 B.R. 462, 470 (Bankr. N.D. Ohio 2009); *In re Toney*, 349 B.R. 516, 520 (Bankr. E.D. Tenn. 2006).

Third, and perhaps most important, the court's authority and duty to enter a discharge in Chapter 13 cases is circumscribed by Section 1328(a) which provides, in relevant part, as follows:

> . . . as soon as practicable *after completion by the debtor of all payments under the plan* . . . unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title . . .

11 U.S.C. § 1328(a) (emphasis added).  Section 1328(a) ties the discharge to what the debtor has paid, and not to what a trustee has distributed.  In contrast, Section 1328(b), which governs the "hardship discharge," ties the discharge to, among other factors, what the trustee has distributed

which must be "not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title." *See* 11 U.S.C. § 1328(b)(2). Here, although the Debtors may have been able to fund a 5% dividend in March, they have not persuaded the court that they have remitted all disposable income during the Plan term.

The authorities upon which the Debtors rely are not persuasive. Indeed, given the outcome in most of the cited cases, Debtors' citation to these authorities is puzzling. For example, in *In re Carr*, 159 B.R. 538 (D. Neb. 1993), the District Court affirmed the Bankruptcy Court's decision to withhold the debtor's discharge because, as in the present case, the debtor did not make all payment required by his plan. The court in *In re Delmonte*, 237 B.R. 132 (Bankr. E.D. Tex. 1999), similarly found, as here, that a debtor who did not make all payments of disposable income, did not earn his discharge. *In re Goude*, 201 B.R. 275 (Bankr. D. Ore. 1996) and *In re Rivera*, 177 B.R. 332 (Bankr. C.D. Calif. 1995) are to similar effect. For that matter, the transcript of Judge Gregg's bench ruling in *In re LaRue*, 03-11586, does not help the Debtors because the court in that case simply held the debtor to his bargain by requiring him to make the scheduled payments and 36 months of disposable income (represented by tax refunds), as the plan required. In addition, the court expressed concern about the treatment of the trustee's commission, and whether it should come from the unsecured "base" or could be collected by requiring additional payments beyond the base. Moreover, the court expressly recognized that the debtor in that case made mortgage payments directly, unlike the Debtors in this case. Finally, the court observed that missed payments would result in extending the plan term —in other words, the court would not have excused payment defaults. Simply put, nothing in the unpublished *LaRue* transcript supports the present Debtors' request to excuse missed plan

payments (or avoid remitting all their disposable income as the plan requires) just because they may be in a position to fund the 5% dividend to unsecured creditors that they proposed.

As the Trustee points out in his latest submission, relief for the Debtors may lie in filing a plan amendment with proof that their payments in fact represented their actual disposable income in light of previously unscheduled and unanticipated expenses, for example. Such a showing might permit the court to excuse the payment defaults. The fact that the Debtors may have remitted enough to permit the Trustee to distribute a 5% dividend to unsecured creditors, however, does not relieve them of the obligation to make all weekly payments and any other payments representing their disposable income earned during the applicable commitment period.

There is no dispute that they have failed to make all payments required under the Plan and so the court must deny the Motion.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 143) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon John Gordon Young and Geraldine J. Young, Roger G. Cotner, Esq., Brett N. Rodgers, Esq., and all parties listed on the Debtors' mailing matrix.

END OF ORDER

**IT IS SO ORDERED.**

**Dated April 29, 2012**



Scott W. Dales
United States Bankruptcy Judge